UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JASON M. MIDDLETON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00110-JPH-MJD |
| | ) |
| WEXFORD OF INDIANA, | ) |
| FRANCO, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Jason M. Middleton, an Indiana inmate, brought this action under 42 U.S.C. § 1983 alleging that Dr. Franco and Wexford of Indiana, LLC (Wexford) violated his Eighth Amendment rights by delaying necessary dental treatment and enacting policies that caused the delay, respectively. Dkt. 1, 7. Defendants filed a motion for summary judgment which is now fully briefed. Dkt. [34], 46, 48, 51, 52. Because there is no genuine issue of material fact as to the claims asserted, Defendants' motion for summary judgment is **GRANTED.**

**I.
Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."

1

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.
## Facts and Background

### A. The Parties

At all times relevant to the complaint, Mr. Middleton was an Indiana Department of Correction (IDOC) inmate housed at the Putnamville Correctional Facility (Putnamville).

Miguel Franco, D.D.S. is a dentist employed by Wexford at Putnamville. Dkt. 36-2 ¶¶ 1-2 (Affidavit of Miguel Franco, DDS).

Wexford of Indiana, LLC is the entity with whom the IDOC contracted to provide medical services to inmates. Dkt. 36-3 at ¶ 7 (Affidavit of Dr. Michael Mitcheff).

### B. Mr. Middleton's Dental Issues

Prior to Dr. Franco's arrival at Putnamville on October 28, 2019,

Putnamville had been without a full-time dentist for several months. Dkt. 36-2, ¶ 8. Dr. Tyler was serving as a part-time dentist seeing patients at the facility for acute dental needs. *Id.* When Dr. Franco started at Putnamville, there were still numerous inmates in need of evaluations and treatment. *Id.*

In September and October 2019, Mr. Middleton submitted Health Care Request forms complaining about two broken teeth that were causing him pain. Dkt. 36-1 at 2 (Dental Records); dkt. 36-5 at 22:18-23:5 (Middleton's Deposition).[1] In response, x-rays were taken on October 10, 2019. Dkt. 36-1 at 2. The x-rays showed that tooth #2 had decay into the nerve and that another tooth might be restorable. *Id.* The Dental Records show that 20 Naproxen pills were dispensed to Mr. Middleton for pain on October 31, 2019. *Id.* at 1.

Dr. Franco saw Mr. Middleton for the first time on November 15, 2019. Dkt. 36-2 at ¶ 9. During this visit, Mr. Middleton complained of pain in the area of tooth #2 (which is his upper right side) and teeth #28 and #29 on his lower right side. *Id.* Dr. Franco believed that while teeth #28 and #29 were decayed, they could be restored. *Id.* Tooth #2, however, was beyond restoration and required extraction. *Id.* After obtaining Mr. Middleton's consent, Dr. Franco extracted tooth #2 on that same day. *Id.* Dr. Franco informed Mr. Middleton that he would be scheduled to return for the fillings of tooth #28 and #29 within six weeks. *Id.*; dkt. 36-5:34:18-25.

---

[1] Mr. Middleton provides no legal authority in support of his request to "strike" his deposition nor does he designate evidence supporting the statement that "it may not be accurate, or complete". Dkt. 46 at 5. Accordingly, his request to strike is **denied.**

Mr. Middleton returned on November 19, 2019, to have fillings put into teeth #28 and #29. Dkt. 36-2 at ¶ 11. After this appointment, Mr. Middleton's teeth stopped hurting. Dkt. 36-5 at 44:5-8.

A few weeks later, December 31, 2019, Dr. Tyler performed a cavity restoration on tooth #24. Dkt. 36-3 at ¶ 12.

Mr. Middleton testified that he lost 75 pounds between September 21 and November 14, 2019. Dkt. 36-5 at 14:8-10; 16:8-22. Medical records, however, show that Mr. Middleton was approximately the same weight on September 17, 2019 (160 pounds), and on December 12, 2019 (167 pounds). Dkt. 36-2 at ¶ 20. Mr. Middleton explained that there was no discrepancy between his testimony and the medical records. Rather, he gained 77 pounds between November 14 and December 12. Dkt. 36-5 at 16:20-22.

Dr. Franco never observed that Mr. Middleton was unnaturally thin, nor did he appear malnourished or dehydrated. Dkt. 36-2 at ¶ 18. Dr. Franco is not aware of any medical possibility that a patient could lose 75 pounds in a matter of weeks, and in a few weeks thereafter regain all that weight. *Id.* at ¶ 21.

Dr. Michael Mitcheff was employed by Wexford as the Regional Medical Director at all relevant times. Dkt. 36-3 at ¶ 2.[2] It is his professional opinion that it is "nearly impossible" to have weight fluctuations of 70-80 pounds over a few months. *Id.* ¶ 12. Even extreme levels of weight losses and gains would be more

---

[2] Mr. Middleton's objection to Dr. Mitcheff's testimony on the basis that he believes Dr. Mitcheff is a liar and has been disrespectful and unprofessional in the past, is **overruled** because his alleged "previous history" with Dr. Mitcheff, dkt. 46 at 3, is not basis to disqualify him as a witness. *See* Fed.R.Evid. 701 and 702.

in the range of 20-25 pounds. *Id.* Based on Dr. Mitcheff's review of medical records dating from September 2019 through January 2020, Mr. Middleton complained of dental pain and losing weight. *Id.* ¶ 13. None of the records reflect the drastic weight loss alleged by Mr. Middleton. *Id.*

### C.  IDOC Policy

IDOC Healthcare Services Directives Policy 2.33A on "acceptable wait times" states that after a referral, a patient with routine dental needs must be evaluated within six weeks. Dkt. 36-2 at ¶ 25; dkt. 36-4. Policy 2.33A was not created by Wexford but already existed when Wexford began its contract with the IDOC. Dkt. 36-3 at ¶ 7. Nothing in Policy 2.33A prohibits medical staff from scheduling a patient for more urgent care as deemed necessary. *Id.* at ¶ 8. And patients who have emergencies or acute dental needs are to be seen as soon as possible. *Id.* at ¶ 6. Wexford staff are required to comply with the policy to the extent possible. *Id.* at ¶ 7.

### III.
### Analysis

Mr. Middleton argues that the Defendants were deliberately indifferent to his serious dental needs. At all relevant times, Mr. Middleton was a convicted offender so the Eighth Amendment applies to his deliberate indifference claims. *Estate of Clark v. Walker,* 865 F.3d 544, 546, n.1 (7th Cir. 2017).

The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and

5

(2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019).

"A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Eagan*, 987 F.3d at 695 (internal quotation omitted). The subjective standard "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (internal quotation omitted). Even a showing of medical malpractice is not sufficient. *Id.* "Rather, the evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.*

The Defendants argue that they are entitled to summary judgment because Mr. Middleton has not designated evidence showing that they were deliberately indifferent to Mr. Middleton's dental needs.

### A.   Claim Against Dr. Franco

Mr. Middleton claims Dr. Franco was deliberately indifferent when he told him that he would have to wait six weeks after having tooth #2 extracted for treatment of the two other teeth that were bothering him.

To determine if a prison official acted with deliberate indifference, we "'look into [the official's] subjective state of mind.'" *Eagan,* 987 F.3d at 695 (quoting *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016)). "Even objective

recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Petties*, 836 F.3d at 728. "Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.*

Mr. Middleton has presented no evidence from which a reasonable jury could infer that Dr. Franco knew of and ignored a substantial risk of serious harm. Rather, the undisputed record shows that Dr. Franco extracted tooth # 2 on November 15, 2019, and that four days later he filled cavities in two other teeth that were causing Mr. Middleton pain.

To the extent Mr. Middleton alleges that he lost and later regained 75 pounds in a matter of months because of dental pain, the designated evidence does not support this claim. Mr. Middleton's Health Care Request forms on which he allegedly documented weighing himself every day from September through December 2019, are not in the record. Moreover, his handwritten notes that allegedly show his weight fluctuating 20 pounds from one day to the next in December 2020, dkt. 46-1 at 5, are not authenticated and therefore not admissible records. And two physicians have opined that such an extreme fluctuation in weight would not be possible.

Even if Mr. Middleton had lost significant amounts of weight, there is no designated evidence showing that Dr. Franco was aware of such weight loss. No reasonable jury could find that Dr. Franco "actually knew of and disregarded a substantial risk of harm," *Petties*, 836 F.3d at 728, relating to weight loss.

7

For these reasons, Dr. Franco is entitled to summary judgment.

### B.    Claim Against Wexford

Although a private entity, Wexford acts under color of state law and therefore may be liable for violating Mr. Middleton's Eighth Amendment rights under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Walker*, 940 F.3d at 966. "Prevailing on such a claim requires evidence that a Wexford policy, practice, or custom caused" the deliberate indifference. *Id.* To prevail on a *Monell* claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

Here, Mr. Middleton has not established that Wexford's policy permitted a six-week wait time for routine dental care. Rather, the wait time was pursuant to an IDOC policy that Wexford medical staff were expected to follow. Even if it had been Wexford's policy, however, Mr. Middleton has not shown that such a policy violated his constitutional rights because it was not applied to Mr. Middleton in November 2019. Instead, Dr. Franco treated Mr. Middleton's three problematic teeth over a period of four days.

Mr. Middleton argues that Wexford and Dr. Franco "misused" the six-week policy by marking patients' needs as "routine" when they were actually "acute," thereby providing cover for not scheduling them sooner. Dkt. 46 at 11-13. But

8

Mr. Middleton has not presented evidence that this occurred. A party opposing summary judgment must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Inferences supported only by speculation or conjecture will not suffice. *Skiba v. Ill. Cent. R. R. Co.*, 884 F.3d 708, 721-22 (7th Cir. 2018).

No reasonable jury could find that Wexford had a policy that caused a denial of necessary treatment to Mr. Middleton. *See Thomas v. Martija*, 991 F.3d 763, 774 (7th Cir. 2021) (affirming grant of summary judgment in favor of Wexford where no individual defendant was liable and where plaintiff presented no evidence of a policy not to provide adequate care).

## IV. Conclusion

For the reasons discussed above, the defendants' motion for summary judgment, dkt. [34], is **granted.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 9/7/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JASON M. MIDDLETON, 158480
158480
727 Moon Road
Plainfield, IN 46168

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

10